## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| JORGE PETER CORNELL, | : | 1:11CR402-1 |
| also known as "King J" and | : | SUPERSEDING |
| "King Jay" | : | |
| RUSSELL LLOYD KILFOIL, | : | 1:11CR402-2 |
| also known as "King Peaceful" and | : | |
| "Jonathan Hernandez" | : | |
| RANDOLPH LEIF KILFOIL, | : | 1:11CR402-3 |
| also known as "King Paul" | : | |
| JASON PAUL YATES, | : | 1:11CR402-4 |
| also known as "King Squirrel" | : | |
| LOUIS ALBERTO ROSA, | : | 1:11CR402-5 |
| also known as "King Speechless" | : | |
| WESLEY ANDERSON WILLIAMS, | : | 1:11CR402-6 |
| also known as "King Bam" | : | |
| STEAPHAN ACENCIO-VASQUEZ, | : | 1:11CR402-7 |
| also known as "King Leo" | : | |
| MARCELO YSRAEL PEREZ, | : | 1:11CR402-8 |
| also known as "King Lyrix" | : | |
| and "King Sacrifice" | : | |
| SAMUEL ISAAC VELASQUEZ, | : | 1:11CR402-9 |
| also known as "King Hype" | : | |
| CHARLES LAWRENCE MOORE, | : | 1:11CR402-10 |
| also known as "King Toasty" | : | |
| RICHARD LEE ROBINSON, | : | 1:11CR402-11 |
| also known as "King Focus" | : | |
| IRVIN VASQUEZ, | : | 1:11CR402-12 |
| also known as "King Dice" | : | |
| CARLOS COLEMAN, | : | 1:11CR402-13 |
| also known as "King Spanky" | : | |
| ERNESTO WILSON, | : | 1:11CR402-14 |
| also known as "King Yayo" | : | |

## GOVERNMENT'S PROPOSED INSTRUCTIONS TO THE JURY

The United States of America, by its undersigned counsel, respectfully requests that the

Court instruct the jury in this case using the following proposed instructions. The government

reserves the right to request further instructions should an issue arise during the trial that may

necessitate such additional instructions. Unless otherwise noted, the requested instructions are

standard instructions from Matthew Bender, <u>Modern Federal Jury Instructions – Criminal</u> (2011).

      The government further requests that the Court, in accordance with Rule 30 of the Federal Rules of Criminal Procedure, inform counsel prior to counsel's arguments to the jury whether it will give the requested instructions.

      Respectfully submitted, this the 25th day of September, 2012.

RIPLEY RAND
United States Attorney


ROBERT A. J. LANG
Assistant United States Attorney


LANNY A. BREUER
ASSISTANT ATTORNEY GENERAL
DEPARTMENT OF JUSTICE
CRIMINAL DIVISION


LESHIA M. LEE-DIXON
Trial Attorney

Ladies and gentlemen, you are about to enter your final duty, which is to decide the fact issues in the case.

Before you do that, I will instruct you on the law.  Please pay close attention.  I will go as slowly as I can and be as clear as possible.

I told you at the very start of the trial that your principal function during the taking of testimony would be to listen carefully and observe each witness who testified.  It has been obvious to me and to counsel that you have faithfully discharged this duty.  Your interest never flagged, and it is evident that you followed the testimony with close attention.

I ask you to give me that same careful attention, as I instruct you on the law.

Inst. 2-1.

## JURY INSTRUCTION NO. TWO
### (Role of the Court)

You have now heard all of the evidence in the case and very shortly you will hear the final arguments of the lawyers for the parties.

My duty at this point is to instruct you as to the law. It is your duty to accept these instructions of law and apply them to the facts as you determine them, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant under the law for your consideration.

On these legal matters, you must take the law as I give it to you. If any attorney states a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You should not single out any instruction as alone stating the law, but you should consider my instructions as a whole when you retire to deliberate in the jury room.

You should not, any of you, be concerned about the wisdom of any rule that I state. Regardless of any opinion that you may have as to what the law may be -- or ought to be -- it would violate your sworn duty to base a verdict upon any other review of the law than that which I give you.

Inst. 2-2 (modified).

## JURY INSTRUCTION NO. THREE
### (Role of the Jury)

Your final role is to pass upon and decide the issues of fact that are in the case. You, the members of the jury, are the sole and exclusive judges of the facts. You pass upon the weight of the evidence; you determine the credibility of the witnesses; you resolve such conflicts as there may be in the testimony, and you draw whatever reasonable inferences you decide to draw from the facts as you have determined them.

I shall later discuss with you how to pass upon the credibility -- or believability -- of the witnesses.

In determining the facts, you must rely upon your own recollection of the evidence. If any references by the court or by counsel to matters of testimony or exhibits that does not coincide with your own recollection of that evidence, it is your recollection which should control during your deliberations and not the statements of the court or of counsel.

What the lawyers say in their opening statements, in their closing arguments, in their objections, or in their questions is not evidence. In this connection, you should bear in mind that a question put to a witness is never evidence. It is only the answer which is evidence. Nor is anything I may have said during the trial or may say during these instructions with respect to a matter of fact to be taken in substitution for your own independent recollection. What I say is not evidence.

The evidence before you consists of the answers given by witnesses -- the testimony they gave, as you recall it -- and the exhibits that were received in evidence.

5

The evidence does not include questions.  Only the answers are evidence.  But you may not consider any answer that I directed you to disregard or that I directed struck from the record.  Do not consider such answers.

You may also consider the stipulations of the parties as evidence.

Since you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be.  The rulings I have made during the trial are not any indication of my views of what your decision should be as to whether or not the guilt of the defendant has been proven beyond a reasonable doubt.

I also ask you to draw no inference from the fact that upon occasion I asked questions of certain witnesses.  These questions were only intended for clarification or to expedite matters and certainly were not intended to suggest any opinions on my part as to the verdict you should render or whether any of the witnesses may have been more credible than any other witness.  You are expressly to understand that the court has no opinion as to the verdict you should render in this case.

As to the facts, ladies and gentlemen, you are the exclusive judges.  You are to perform the duty of finding the facts without bias, prejudice or sympathy as to any party.

Inst. 2-3 (modified).

## JURY INSTRUCTION NO. FOUR
### (Juror Obligations)

In determining the facts, the jury is reminded that before each member was accepted and sworn to act as a juror, he or she was asked questions concerning competency, qualifications, fairness and freedom from prejudice and bias. On the faith of those answers, the juror was accepted by the parties. Therefore, those answers are as binding on each of the jurors now as they were then, and should remain so, until the jury is discharged from consideration of this case.

Inst. 2-4.

## JURY INSTRUCTION NO. FIVE
### (The Government as a Party)

You are to perform the duty of finding the facts without bias or prejudice as to any party. You are to perform your final duty in an attitude of complete fairness and impartiality.

This case is important to the government, for the enforcement of criminal laws is a matter of prime concern to the community. Equally, it is important to the defendants, who are charged with serious crimes.

The fact that the prosecution is brought in the name of the United States of America entitles the government to no greater consideration than that accorded to any other party to a litigation. By the same token, the government is entitled to no less consideration. All parties, whether government or individuals, stand as equals at the bar of justice.

Inst. 2-5.

# JURY INSTRUCTION NO. SIX
## (Conduct of Counsel; Objections and Rulings)

It is the duty of the attorney for each side of a case to object when the other side offers testimony or other evidence which the attorney believes is not properly admissible. Counsel also have the right and duty to ask the court to make rulings of law and to request conferences at the side bar out of the hearing of the jury. All those questions of law must be decided by me, the court. You should not show any prejudice against an attorney or his client because the attorney objected to the admissibility of evidence, or asked for a conference out of the hearing of the jury or asked the court for a ruling on the law.

When the court has sustained an objection to a question addressed to a witness, the jury must disregard the question entirely, and may draw no inference from the wording of it, or speculate as to what the witness would have said if he or she had been permitted to answer the question.

As I already indicated, my rulings on the admissibility of evidence do not indicate any opinion about the weight or effect of such evidence. You are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.

Inst. 2-8 (modified).

9

## JURY INSTRUCTION NO. SEVEN
### (Improper Considerations)

Your verdict must be based solely upon the evidence developed at trial or the lack of evidence.

It would be improper for you to consider, in reaching your decision as to whether the government sustained its burden of proof, any personal feelings you may have about the defendant's race, religion, national origin, sex or age. All persons are entitled to the presumption of innocence and the government has the burden of proof, as I will discuss in a moment.

It would be equally improper for you to allow any feelings you might have about the nature of the crime charged to interfere with your decision-making process.

To repeat, your verdict must be based exclusively upon the evidence or the lack of evidence in the case.

Inst. 2-11.

## JURY INSTRUCTION NO. EIGHT
### (Sympathy)

Under your oath as jurors you are not to be swayed by sympathy.  You are to be guided solely by the evidence in this case, and the crucial, hard-core question that you must ask yourselves as you sift through the evidence is:  Has the government proven the guilt of a defendant beyond a reasonable doubt?

It is for you alone to decide whether the government has proven that a defendant is guilty of the crimes charged solely on the basis of the evidence and subject to the law as I charge you. It must be clear to you that once you let fear or prejudice, or bias or sympathy interfere with your thinking there is a risk that you will not arrive at a true and just verdict.

If you have a reasonable doubt as to a defendant's guilt, you should not hesitate for any reason to find a verdict of acquittal.  But on the other hand, if you should find that the government has met its burden of proving a defendant's guilt beyond a reasonable doubt, you should not hesitate because of sympathy or any other reason to render a verdict of guilty.

Inst. 2-12.

11

## JURY INSTRUCTION NO. NINE
### (Jury to Consider Only These Defendants)

You are about to be asked to decide whether or not the government has proven beyond a reasonable doubt the guilt of these defendants. You are not being asked whether any other person has been proven guilty. Your verdict should be based solely upon the evidence or lack of evidence as to these defendants, in accordance with my instructions and without regard to whether the guilt of other people has or has not been proven.

Inst. 2-18.

## JURY INSTRUCTION NO. TEN
### (Punishment)

The question of possible punishment of the defendants is of no concern to the jury and should not, in any sense, enter into or influence your deliberations. The duty of imposing sentence rests exclusively with the court. Your function is to weigh the evidence in the case and determine whether or not the defendant is guilty beyond a reasonable doubt, solely upon the basis of such evidence. Under your oath as jurors, you cannot allow a consideration of the punishment which may be imposed upon the defendant, if he is convicted, to influence your verdict, in any way, or, in any sense, enter into your deliberations.

Inst. 9-1.

## JURY INSTRUCTION NO. ELEVEN
### (Presumption of Innocence -- Burden of Proof)

The defendants have pleaded not guilty to the charge in the indictment. To convict the defendant, the burden is on the prosecution to prove the defendant's guilt of each element of the charge beyond a reasonable doubt. This burden never shifts to the defendant, for the simple reason that the law presumes a defendant to be innocent and never imposes upon a defendant in a criminal case the burden or duty of calling any witness or producing any evidence.

In other words, each defendant starts with a clean slate and is presumed innocent of each charge until such time, if ever, that you as a jury are satisfied that the Government has proven a given defendant is guilty of a given charge beyond a reasonable doubt.

Inst. 4-1.

## JURY INSTRUCTION NO. TWELVE
### (Number of Witnesses and Uncontradicted Testimony)

The fact that one party called more witnesses and introduced more evidence than the other does not mean that you should necessarily find the facts in favor of the side offering the most witnesses.  By the same token, you do not have to accept the testimony of any witness who has not been contradicted or impeached, if you find the witness not to be credible.  You also have to decide which witnesses to believe and which facts are true.  To do this you must look at all the evidence.  (After examining all the evidence, you may decide that the party calling the most witnesses has not persuaded you because you do not believe its witnesses, or because you believe the fewer witnesses called by the other side).

In a moment, I will discuss the criteria for evaluating credibility; for the moment, however, you should keep in mind that the burden of proof is always on the government and the defendants are not required to call any witnesses or offer any evidence, since each defendant is presumed to be innocent.

Inst. 4-3.

## JURY INSTRUCTION NO. THIRTEEN
### (Improper Consideration of Defendant's
### Right Not to Testify)

The defendant chose not to testify in this case. Under our Constitution, a defendant has no obligation to testify or to present any evidence, because it is the Government's burden to prove a defendant guilty beyond a reasonable doubt. A defendant is never required to prove that he or she is innocent.

Therefore, you must not attach any significance to the fact that a given defendant did not testify. No adverse inference against a defendant may be drawn by you because he did not take the witness stand, and you may not consider it in any way in your deliberations in the jury room.

Inst. 5-21.

## JURY INSTRUCTION NO. FOURTEEN
### (Specific Investigative Techniques Not Required)

During the trial you have heard testimony of witnesses and argument by counsel that the government did not utilize specific investigative techniques. You may consider these facts in deciding whether the government has met its burden of proof, because as I told you, you should look to all of the evidence or lack of evidence in deciding whether the defendant is guilty. However, you also are instructed that there is no legal requirement that the government use any of these specific investigative techniques to prove its case. Law enforcement *techniques* are not your concern.

Your concern, as I have said, is to determine whether or not, on the evidence or lack of evidence, the defendant's guilt has been proved beyond a reasonable doubt.

Inst. 4-4.

# JURY INSTRUCTION NO. FIFTEEN
## (Direct and Circumstantial Evidence)

In deciding whether or not the Government has met its burden of proof, you may consider both direct evidence and circumstantial evidence.

Direct evidence is evidence that proves a disputed fact directly. For example, when a witness testifies to what he or she saw, heard or observed, that is called direct evidence.

Circumstantial evidence is evidence that tends to prove a disputed fact by proof of other facts. To give a simple example, suppose that when you came into the courthouse today the sun was shining and it was a nice day, but the courtroom blinds were drawn and you could not look outside. Then later, as you were sitting here, someone walked in with a dripping wet umbrella and, soon after, somebody else walked in with a dripping wet raincoat.

Now, on our assumed facts, you cannot look outside of the courtroom and you cannot see whether or not it is raining. So you have no direct evidence of that fact. But, on the combination of the facts about the umbrella and the raincoat, it would be reasonable for you to infer that it had begun raining.

That is all there is to circumstantial evidence. Using your reason and experience, you infer from established facts the existence or the nonexistence of some other fact. Please note, however, that it is not a matter of speculation or guess: it is a matter of logical inference.

The law makes no distinction between direct and circumstantial evidence. Circumstantial evidence is of no less value than direct evidence, and you may consider either or both, and may give them such weight as you conclude is warranted.

Inst. 5-2.

**(Inference Defined)**

During the trial you have heard the attorneys use the term "inference," and in their arguments they have asked you to infer, on the basis of your reason, experience and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact which you know exists.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence. The government asks you to draw one set of inferences, while the defense asks you to draw another. It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or conclusion which you, the jury, are permitted to draw--but not required to draw--from the facts which have been established by either direct or circumstantial evidence. In drawing inferences, you should exercise your common sense.

So, while you are considering the evidence presented to you, you are permitted to draw, from the facts which you find to be proven, such reasonable inferences as would be justified in light of your experience.

Here again, let me remind you that, whether based upon direct or circumstantial evidence, or upon the logical, reasonable inferences drawn from such evidence, you must be satisfied of the guilt of the defendant beyond a reasonable doubt before you may convict.

Inst. 6-1.

## JURY INSTRUCTION NO. SEVENTEEN
### (Questions)

Let me emphasize that a lawyer's question is not evidence. At times, a lawyer on cross-examination may have incorporated into a question a statement which assumed certain facts to be true and asked the witness if the statement was true. If the witness denies the truth of a statement, and if there is no evidence in the record proving that the assumed fact is true, then you may not consider the fact to be true simply because it was contained in the lawyer's question.

The famous example of this is the lawyer's question of a married witness: "When did you stop beating your wife?" You would not be permitted to consider as true the assumed fact that he ever beat his wife, unless the witness himself indicated he had, or unless there is some other evidence in the record that he had beaten his wife.

In short, questions are not evidence; answers are.


Inst. 5-3.

## JURY INSTRUCTION NO. EIGHTEEN
### (Testimony, Exhibits, and Stipulations)

The evidence in this case consists of the sworn testimony of the witnesses, the exhibits received in evidence and stipulations.

Exhibits which have been marked for identification but not received may not be considered by you as evidence. Only those exhibits received may be considered as evidence.

Similarly, you are to disregard any testimony when I have ordered it to be stricken. As I indicated before, only the witnesses' answers are evidence and you are not to consider questions as evidence. Similarly, statements by counsel are not evidence.

You should consider the evidence in light of your own common sense and experience, and you may draw reasonable inferences from the evidence.

Anything you may have seen or heard about this case outside the courtroom is not evidence and must be entirely disregarded.

Inst. 5-4.

## JURY INSTRUCTION NO. NINETEEN
### (Stipulation of Facts)

A stipulation is an agreement among the parties that a certain fact is true.  You must regard such agreed facts as true.


Inst. 5-6.

## JURY INSTRUCTION NO. TWENTY
### (Transcripts of Tape Recordings)

The government has been permitted to hand out a typed document which it prepared containing the government's interpretation of what appears on the tape recordings which have been received as evidence. Those were given to you as an aid or guide to assist you in listening to the tapes. However, they are not in and of themselves evidence. Therefore, when the tapes were played I advised you to listen very carefully to the tapes themselves. You alone should make your own interpretation of what appears on the tapes based on what you heard. If you think you heard something differently than appeared on the transcript then what you heard is controlling.

Let me say again, you, the jury, are the sole judges of the facts.

Inst. 5-9.

## JURY INSTRUCTION NO. TWENTY-ONE
### (Consensual Recordings)

The government has offered evidence in the form of tape recordings of conversations with one of the defendants.  These recordings were made without the knowledge of the defendant, but with the consent and agreement of one of the other parties to the conversations.

The use of this procedure to gather evidence is perfectly lawful, and the government is entitled to use the tape recordings in this case and to offer the transcripts as evidence because the conversations were not conducted in English.


Inst. 5-10.

24

**<u>JURY INSTRUCTION NO. TWENTY-TWO</u>**
**(Consensual Recordings)**

The government has offered evidence in the form of tape recordings of telephone calls with the defendant which were obtained without the knowledge of the parties to the conversations, but with the consent and authorization of the court. These so-called wiretaps were lawfully obtained.

The use of this procedure to gather evidence is perfectly lawful and the government is entitled to use such "wiretaps" in this case.

Inst. 5-11.

## JURY INSTRUCTION NO. TWENTY-THREE
### (Witness Credibility)

It must be clear to you by now that the Government and the defendant are asking you to draw very different conclusions about various factual issues in the case. Deciding these issues will involve making judgments about the testimony of the witnesses you have listened to and observed. In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence that may help you to decide the truth and the importance of each witness's testimony.

Your decision whether or not to believe a witness may depend on how that witness impressed you. How did the witness appear? Was the witness candid, frank, and forthright; or, did the witness seem to be evasive or suspect in some way? How did the way the witness testified on direct examination compare with how the witness testified on cross-examination? Was the witness consistent or contradictory? Did the witness appear to know what he or she was talking about? Did the witness strike you as someone who was trying to report his or her knowledge accurately? These are examples of the kinds of common sense questions you should ask yourselves in deciding whether a witness is, or is not, truthful.

How much you choose to believe a witness may also be influenced by the witness's bias. Does the witness have a relationship with the Government or the defendant that may affect how he or she testified? Does the witness have some incentive, loyalty, or motive that might cause him or her to shade the truth? Does the witness have some bias, prejudice, or hostility that may cause the witness to give you something other than a completely accurate account of the facts he or she testified to?

26

You should also consider whether a witness had an opportunity to observe the facts he or she testified about. Also, you should consider whether the witness's recollection of the facts stands up in light of the other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause you to discredit such testimony. Two or more persons witnessing an incident or a transaction may see or hear it differently; an innocent misrecollection, like a failure of recollection, is not an uncommon experience. In weighing the effect of a discrepancy, always ask yourself whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

In other words, what you must try to do in deciding credibility is to size up a person just as you would in any important matter when you are trying to decide if a person is truthful, straightforward, and accurate in his or her recollection.

Inst. 7-1 (modified).

## JURY INSTRUCTION NO. TWENTY-FOUR
### (Interest in Outcome)

In evaluating credibility of the witnesses, you should take into account any evidence that the witness who testified may benefit in some way from the outcome of this case. Such an interest in the outcome creates a motive to testify falsely and may sway the witness to testify in a way that advances his own interests. Therefore, if you find that any witness whose testimony you are considering may have an interest in the outcome of this trial, then you should bear that factor in mind when evaluating the credibility of his or her testimony and accept it with great care.

This is not to suggest that every witness who has an interest in the outcome of a case will testify falsely. It is for you to decide to what extent, if at all, the witness' interest has affected or colored his or her testimony.

Inst 7-3.

## JURY INSTRUCTION NO. TWENTY-FIVE
### (Defendant's Interest if Defendant Testifies)

In a criminal case, the defendant cannot be required to testify, but, if he chooses to testify, he is, of course, permitted to take the witness stand on his own behalf.  In this case, the defendant decided to testify.  You should examine and evaluate his testimony just as you would the testimony of any witness with an interest in the outcome of this case.  You should not disregard or disbelieve his testimony simply because he is charged as a defendant in this case.


Inst. 7-4.

## JURY INSTRUCTION NO. TWENTY-SIX
### (Accomplices Called by the Government)

You have heard witnesses who testified that they were actually involved in planning and carrying out the crime(s) charged in the indictment. There has been a great deal said about these so-called accomplice witnesses in the summations of counsel and whether or not you should believe them.

The government argues, as it is permitted to do, that it must take the witnesses as it finds them. It argues that only people who themselves take part in criminal activity have the knowledge required to show criminal behavior by others.

For those very reasons, the law allows the use of accomplice testimony. Indeed, it is the law in federal courts that the testimony of accomplices may be enough in itself for conviction, if the jury finds that the testimony establishes guilt beyond a reasonable doubt.

However, it is also the case that accomplice testimony is of such nature that it must be scrutinized with great care and viewed with particular caution when you decide how much of that testimony to believe.

I have given you some general considerations on credibility and I will not repeat them all here. Nor will I repeat all of the arguments made on both sides. However, let me say a few things that you may want to consider during your deliberations on the subject of accomplices.

You should ask yourselves whether these so-called accomplices would benefit more by lying, or by telling the truth. Was their testimony made up in any way because they believed or hoped that they would somehow receive favorable treatment by testifying falsely? Or did they believe that their interests would be best served by testifying truthfully? If you believe that the

30

witness was motivated by hopes of personal gain, was the motivation one which would cause him to lie, or was it one which would cause him to tell the truth? Did this motivation color his testimony?

In sum, you should look at all of the evidence in deciding what credence and what weight, if any, you will want to give to the accomplice witnesses.

Inst. 7-5.

# JURY INSTRUCTION NO. TWENTY-SEVEN
## (Informal Immunity of Government Witness)

You have heard the testimony of witnesses who have been promised that, in exchange for testifying truthfully, completely and fully, they would not be prosecuted for any crimes they may have committed here in court or in interviews with the prosecutors.  This promise was not a formal order of immunity by the court, but was arranged directly between the witness and the government.

The government is permitted to make these kinds of promises and is entitled to call as witnesses people to whom these promises are given.  You are instructed that you may convict a defendant on the basis of such a witness' testimony alone, if you find that the testimony proves the defendant guilty beyond a reasonable doubt.

However, the testimony of a witness who has been promised that he will not be prosecuted should be examined by you with greater care than the testimony of an ordinary witness.  You should scrutinize it closely to determine whether or not it is colored in such a way as to place guilt upon the defendant in order to further the witness' own interests; for such a witness, confronted with the realization that he can win his own freedom by helping to convict another, has a motive to falsify his testimony.

Such testimony should be received by you with suspicion and you may give it such weight, if any, as you believe it deserves.

Inst. 7-9.

## JURY INSTRUCTION NO. TWENTY-EIGHT
### (Codefendant's Plea Agreement)

In this case, there has been testimony from a government witness who pled guilty after entering into an agreement with the government to testify. There is evidence that the government agreed to dismiss some charges against the witness and agreed not to prosecute him on other charges in exchange for the witness' agreement to plead guilty and testify at this trial against the defendant. The government also promised to bring the witness' cooperation to the attention of the sentencing court.

The government is permitted to enter into this kind of plea agreement. You, in turn, may accept the testimony of such a witness and convict the defendant on the basis of this testimony alone, if it convinces you of the defendant's guilt beyond a reasonable doubt.

However, you should bear in mind that a witness who has entered into such an agreement has an interest in this case different than any ordinary witness. A witness who realizes that he may be able to obtain his own freedom, or receive a lighter sentence by giving testimony favorable to the prosecution, has a motive to testify falsely.

Therefore, you must examine his testimony with caution and weigh it with great care. If, after scrutinizing his testimony, you decide to accept it, you may give it whatever weight, if any, you find it deserves.

Inst. 7-11.

## JURY INSTRUCTION NO. TWENTY-NINE
### (Government Witness – Not Proper to Consider Guilty Plea)

You have heard testimony from a government witness who pled guilty to charges arising out of the same facts as this case. You are instructed that you are to draw no conclusions or inferences of any kind about the guilt of the defendants on trial from the fact that a prosecution witness pled guilty to similar charges. That witness' decision to plead guilty was a personal decision about his own guilt. It may not be used by you in any way as evidence against or unfavorable to the defendant on trial here.

Inst. 2-19 (modified).

## JURY INSTRUCTION NO. THIRTY
### (Government Informers)

There has been evidence introduced at trial that the government used an informer in this case. I instruct you that there is nothing improper in the government's use of informers and, indeed, certain criminal conduct never would be detected without the use of informers. You, therefore, should not concern yourselves with how you personally feel about the use of informers, because that is really beside the point. Put another way, your concern is to decide whether the government has proved the guilt of the defendant beyond a reasonable doubt, regardless of whether evidence was obtained by the use of an informer.

On the other hand, where an informer testifies, as he did here, his testimony must be examined with greater scrutiny than the testimony of an ordinary witness. You should consider whether he received any benefits or promises from the government which would motivate him to testify falsely against the defendant. For example, he may believe that he will only continue to receive these benefits if he produces evidence of criminal conduct.

If you decide to accept his testimony, after considering it in light of all the evidence in this case, then you may give it whatever weight, if any, you find it deserves.

Inst. 7-14.

## JURY INSTRUCTION NO. THIRTY-ONE
### (Law Enforcement Witness)

You have heard the testimony of a law enforcement official.  The fact that a witness may be employed by the federal government as a law enforcement official does not mean that his testimony is necessarily deserving of more or less consideration or greater or lesser weight than that of an ordinary witness.

At the same time, it is quite legitimate for defense counsel to try to attack the credibility of a law enforcement witness on the grounds that his testimony may be colored by a personal or professional interest in the outcome of the case.

It is your decision, after reviewing all the evidence, whether to accept the testimony of the law enforcement witness and to give to that testimony whatever weight, if any, you find it deserves.

Inst. 7-16.

## JURY INSTRUCTION NO. THIRTY-TWO
### (Impeachment by Prior Inconsistent Statement)

You have heard evidence that a witness made a statement on an earlier occasion which counsel may argue is inconsistent with the witness' trial testimony. Evidence of a prior inconsistent statement is not to be considered by you as affirmative evidence bearing on the defendant's guilt. Evidence of the prior inconsistent statement was placed before you for the more limited purpose of helping you decide whether to believe the trial testimony of the witness who contradicted himself. If you find that the witness made an earlier statement that conflicts with his trial testimony, you may consider that fact in deciding how much of his trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency, and whether that explanation appealed to your common sense.

It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so how much, if any, weight to be given to the inconsistent statement in determining whether to believe all or part of the witness' testimony.

Inst. 7-19.

## JURY INSTRUCTION NO. THIRTY-THREE
### (The Superseding Indictment is Not Evidence)

With these preliminary instructions in mind, let us turn to the charges against the defendants. Each charge is called a "count." I will refer to each count by the number assigned to it in the Superseding Indictment. I remind you that an indictment itself is not evidence. It merely describes the charges made against the defendants. It is an accusation. It may not be considered by you as any evidence of the guilt of the defendants.

In reaching your determination of whether the government has proved the defendant guilty beyond a reasonable doubt, you may consider only the evidence introduced or lack of evidence.

The Superseding Indictment in this case contains three counts.

Inst. 3-1 (modified).

## JURY INSTRUCTION NO. THIRTY-FOUR
### (Consider Each Defendant Separately)

The indictment contains a total of three counts. Each count charges a defendant with a different crime.

There are eight defendants on trial before you. You must, as a matter of law, consider each count of the indictment and each defendant's involvement in that count separately, and you must return a separate verdict on each defendant for each count in which he or she is charged.

In reaching your verdict, bear in mind that guilt is personal and individual. Your verdict of guilty or not guilty must be based solely upon the evidence about each defendant. The case against each defendant, on each count, stands or falls upon the proof or lack of proof against that defendant alone, and your verdict as to any defendant on any count should not control your decision as to any other defendant or any other count. No other considerations are proper.

Inst. 3-8 (modified).

## JURY INSTRUCTION NO. THIRTY-FIVE
### (Knowingly)

You have been instructed that in order to sustain its burden of proof, the government must prove that the defendants acted knowingly. In the course of my instructions, I will be using the term "knowingly" frequently. When I use the term, I mean the following: a person acts knowingly if he acts intentionally and voluntarily, and not because of ignorance, mistake, accident or carelessness. Whether the defendants acted knowingly may be proven by the defendants' conduct and by all the facts and circumstances surrounding the case.

Inst. 3A-1.

## JURY INSTRUCTION NO. THIRTY-SIX
### (Willfully)

You have been instructed that in order to sustain its burden of proof the government must prove that the defendant acted willfully. "Willfully" means to act with knowledge that one's conduct is unlawful and with the intent to do something the law forbids, that is to say with the bad purpose to disobey or to disregard the law.

The defendant's conduct was not "willful" if it was due to negligence, inadvertence, or mistake.

Inst. 3A-3 (modified).

## JURY INSTRUCTION NO. THIRTY-SEVEN
### (Knowledge, Willfulness, Intent)

Knowledge, willfulness and intent involve the state of a person's mind. Medical science has not yet devised an instrument which can record what was in one's mind in the distant past. Rarely is direct proof available to establish the state of one's mind. This may be inferred from what he says or does: his words, his actions, and his conduct, as of the time of the occurrence of certain events.

The intent with which an act is done is often more clearly and conclusively shown by the act itself, or by a series of acts, than by words or explanations of the act uttered long after the occurrence. Accordingly, intent, willfulness and knowledge are usually established by surrounding facts and circumstances as of the time the acts in question occurred, or the events took place, and the reasonable inferences to be drawn from them.

Inst. 6-17 (modified).

## JURY INSTRUCTION NO. THIRTY-EIGHT
### (Variance -- Dates)

You will note the indictment charges that the offenses were committed "on or about" a certain date. The evidence does not need to establish with certainty the exact date of the alleged offenses. It is sufficient if the evidence in this case establishes beyond a reasonable doubt that the offenses were committed on a date substantially similar to the date alleged.

Inst. 3-12 (modified).

## JURY INSTRUCTION NO. THIRTY-NINE
### (The Superseding Indictment and the Statute -- Count One)

In Count One, the defendants are charged with conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act, otherwise known as the RICO Act. This means that the defendants are charged with conspiracy to conduct or participate in the affairs of an enterprise through a pattern of racketeering activity. Count One of the Superseding Indictment reads as follows:

### COUNT ONE

### The Racketeering Conspiracy

Beginning on a date unknown and continuing to on or about November 29, 2011, the exact dates to the Grand Jurors unknown, in the Middle District of North Carolina, the Eastern District of North Carolina, and the Western District of North Carolina, and elsewhere, **JORGE PETER CORNELL**, also known as "King Jay" and "King J," **RUSSELL LLOYD KILFOIL**, also known as "King Peaceful" and "Jonathan Hernandez," **RANDOLPH LEIF KILFOIL**, also known as "King Paul," **JASON PAUL YATES**, also known as "King Squirrel," **LUIS ALBERTO ROSA**, also known as "King Speechless," **WESLEY ANDERSON WILLIAMS**, also known as "King Bam," **STEAPHAN ACENCIO-VASQUEZ**, also known as "King Leo," **MARCEL YSRAEL PEREZ**, also known as "King Lyrix" and "King Sacrifice," **SAMUEL ISAAC VELASQUEZ**, also known as "King Hype," **CHARLES LAWRENCE MOORE**, also known as "King Toasty," **RICHARD LEE ROBINSON**, also known as "King Focus," **IRVIN VASQUEZ**, also known as "King Dice," **CARLOS COLEMAN**, also known as "King Spanky," and **ERNESTO WILSON**, also known as "King Yayo," each being persons employed by and associated with the Latin Kings, an enterprise that engaged in, and activities which affect, interstate and foreign commerce, together with others known and unknown to the Grand Jury, did knowingly and intentionally conspire to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections

44

1961(1) and (5), consisting of multiple acts indictable under the following provisions of federal law: 18 U.S.C. §§ 1951 (interference with commerce by threats or violence), 1344 (bank fraud), and 659 (theft from interstate shipment); and multiple acts involving murder, robbery, extortion, kidnapping, arson, and narcotics trafficking chargeable under [North Carolina law]; and acts involving narcotics trafficking in violation of 21 U.S.C. §§ 841(a)(1) and 846 (narcotics trafficking).

It was a further part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

## Means and Methods

Among the means and methods by which the defendants and their associates conducted and participated in the conduct of the affairs of the Latin Kings were the following:

Members of the Latin Kings and their associates used intimidation, violence, and threats of violence, including assaults with deadly weapons and murder, to preserve, expand, and protect the enterprise's territory and activities.

Members of the Latin Kings and their associates used intimidation, violence, and threats of violence, including assaults with deadly weapons and murder, to promote and enhance the enterprise's prestige, reputation, and position in the community.

Members of the Latin Kings and their associates used intimidation, violence, and threats of violence, including assaults with deadly weapons and murder, to create a climate of fear to maintain control over victims, witnesses, members, and associates.

Members of the Latin Kings and their associates used intimidation, violence, and threats of violence, including assaults with deadly weapons and murder, to discipline enterprise members and associates who had violated enterprise rules.

Members of the Latin Kings engaged in illegal firearms transactions to further the activities of the enterprise and its members and associates.

Members of the Latin Kings purchased, maintained, and possessed

45

deadly weapons to further the activities of the enterprise and its members and associates.

Members of the Latin Kings recruited and used juveniles to commit robberies and other violent acts for the benefit of the enterprise.

Members of the Latin Kings and their associates used intimidation, violence, and threats of violence, including assaults with deadly weapons and murder, to protect their enterprise from the activities of rival gangs, including but not limited to MS-13 and Bloods.

Members of the Latin Kings committed robberies and thefts from interstate commerce to financially benefit themselves and the enterprise as a whole.

Members of the Latin Kings sold controlled substances to financially benefit themselves and the enterprise as a whole.

Members of the Latin Kings committed extortion to financially benefit themselves and the enterprise as a whole.

Members of the Latin Kings committed bank fraud to financially benefit themselves and the enterprise as a whole.


The defendants are charged with violating section 1962(d) of Title 18 of the United States

Code. Section 1962(d) reads as follows:

It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of [the RICO Act].


Inst. 52-26 (modified)

46

## JURY INSTRUCTION NO. FORTY
### (Prejudice From the Word "Racketeering")

The word "racketeering" has certain implications in our society.  Use of that term in this statute and in this courtroom should not be regarded as having anything to do with your determination of whether the guilt of this defendant has been proven.  The term is only a term used by Congress to describe the statute.


Inst. 52-27.

# JURY INSTRUCTION NO. FORTY-ONE
## (Elements of the Offense)

In order to satisfy its burden of proof as to Count One, the government must prove the

following four elements beyond a reasonable doubt:

| | | |
|---|---|---|
| FIRST: | That an enterprise existed as charged in the Superseding Indictment; |
| SECOND: | That the enterprise affected interstate or foreign commerce; |
| THIRD: | That the defendants were associated with or employed by the enterprise; and |
| FOURTH: | That the defendants knowingly and willfully became members of the conspiracy. |

Inst. 52-28.

## JURY INSTRUCTION NO. FORTY-TWO
### (First Element -- The Enterprise)

To meet its burden of proof as to Count One, the first element that the government must prove beyond a reasonable doubt is that an "enterprise" existed as charged in the Superseding Indictment.

An enterprise need not be a legal entity; it may also be a group of people who have associated together for a common purpose of engaging in a course of conduct over a period of time. This group of people, in addition to having a common purpose, must have an ongoing organization, either formal or informal, and it must have personnel who function as a continuing unit. This group of people does not have to be a legally cognizable entity, such as a partnership or a corporation. This group may be organized for a legitimate and lawful purpose, or it may be organized for an unlawful purpose. The government has charged that the enterprise in this case is the "Almighty Latin King and Queen Nation," or the "Latin Kings," including its leadership, members and associates. The government has further charged that the "common purposes" of the Latin Kings include:

a. Preserving and protecting the power, territory, operations, and prestige of the Latin Kings through the use of intimidation, violence, threats of violence, and destruction of property;

b. Promoting and enhancing the Latin Kings and the activities of its members and associates;

49

c.  Keeping victims, members, and associates in fear of the Latin Kings and in fear of its members and associates through intimidation, violence, threats of violence, and destruction of property;

d.  Preserving and protecting the Latin Kings and its leaders by keeping its members and associates from cooperating with law enforcement through intimidations, violence, threats of violence, and destruction of property; and

e.  Providing support to gang members who are charged with, or incarcerated for, gang-related activities.

If you find that the Latin Kings was a group of people characterized by (1) a common purpose, (2) an ongoing formal or informal organization, and (3) by personnel who function as a continuing unit, then you may find that an enterprise existed.

If you find that this enterprise existed, you must also determine whether this enterprise continued in an essentially unchanged form during substantially the entire period charged in the Superseding Indictment.  This does not mean that everyone involved has to be the same, but the core of the enterprise has to be the same throughout.

Inst. 52-29 (modified)

## JURY INSTRUCTION NO. FORTY-THREE
### (Second Element -- Effect on Interstate or Foreign Commerce)

The second element that the government must prove beyond a reasonable doubt is that the enterprise was engaged in or had an effect upon interstate or foreign commerce.

Interstate commerce includes the movement of goods, services, money, and individuals between states, or between states and the District of Columbia or a U.S. Territory or possession, or between the United States and a foreign state or nation.

The government must prove that the enterprise engaged in interstate or foreign commerce or that its activities affected interstate or foreign commerce in any way, no matter how minimal. It does not have to prove that the racketeering activity affected interstate or foreign commerce, although proof that racketeering acts did affect interstate or foreign commerce is sufficient to satisfy this element.  It is not necessary to prove that the acts of any particular defendant affected interstate or foreign commerce as long as the acts of the enterprise had such effect.  Finally, the government is not required to prove that any defendant knew he was affecting interstate or foreign commerce.

Inst. 52-30

## JURY INSTRUCTION NO. FORTY-FOUR
### (Third Element -- Association with the Enterprise)

The third element that the government must prove beyond a reasonable doubt is that each defendant was associated with or employed by the enterprise.

It is not required that each defendant be employed by or associated with the enterprise for the entire time that the enterprise existed or that each defendant knew one another or were associated with the enterprise at the same time. It is required, however, that the government prove, beyond a reasonable doubt, that at some time during the period indicated in the Superseding Indictment, each defendant himself was employed by or associated with the enterprise.

A person cannot be associated with or employed by an enterprise if he does not know of the enterprise's existence or the nature of its activities. Thus, in order to prove this element, the government must prove beyond a reasonable doubt that each defendant was connected to the enterprise in some meaningful way, and that he knew of the existence of the enterprise and of the general nature of its activities.

Inst. 52-31.

## JURY INSTRUCTION NO. FORTY-FIVE
### (Fourth Element -- Membership in the Conspiracy)

The fourth element that the government must prove beyond a reasonable doubt is that each defendant knowingly and willfully became or were members of the conspiracy with knowledge of its purposes; that is with knowledge and intent that other members of the conspiracy would commit a pattern of racketeering activity.

To meet its burden of proof on membership, the government must also show that each defendant agreed to participate, directly or indirectly, in the affairs of the enterprise through a pattern of racketeering activity. The focus of this element is on each defendant's agreement to participate in the objective of the enterprise to engage in a pattern of racketeering activity, and not on each defendant's agreement to commit the individual criminal acts. The government must prove that the defendants participated in some manner in the overall objective of the conspiracy, and that the conspiracy involved, or would have involved, the commission of two racketeering acts.

In determining whether or not the government has proven each defendant guilty of membership in the conspiracy charge, you are further instructed that the government is not required to prove that either defendant knew one another or that they agreed with each other to violate the law. Instead, the focus of this Count is on each defendant's own agreement to join or remain in the conspiracy charged. Nor is the government required to prove that either defendant agreed with another to commit two racketeering acts. Finally, the government is not required to prove that either defendant personally committed two such acts, although you may conclude that they agreed to participate in the conduct of the enterprise from proof that they agreed to commit

53

or actually committed such acts.  What is important, is that the government prove that the

defendant knowingly adopted the goal of furthering or facilitating the criminal endeavor or, in

other words, the defendant knew generally about the pattern of racketeering activity and agreed

to facilitate the racketeering scheme in some manner and not that the defendant himself

committed the crimes encompassing the pattern of racketeering activity.


Inst 52-32 (modified). See e.g., United States v. Salinas, 522 U.S. 52, 61 (1997) (Unlike the
general conspiracy statute, a RICO conspiracy conviction, does not require an overt or specific
act.  In order to be guilty of conspiracy under RICO, the conspirator must simply agree to the
objective violation of RICO, and the conspirator need not agree personally to commit the two
proscribed acts in violation of the statute.); United States v. Abed, 203 F.3d 822 (4th Cir. 2000)
(approving RICO conspiracy jury instruction).

## JURY INSTRUCTION NO. FORTY-SIX
### (Pattern of Racketeering Activity)

Throughout these instructions you have heard the phrase "racketeering activity." For purposes of Count One, the Superseding Indictment charges that the following racketeering acts were or were intended to be committed as part of the conspiracy: multiple violations of North Carolina law involving murder, robbery, extortion, kidnapping, arson, and narcotics trafficking and federal law involving interference with commerce by threats or violence, bank fraud, theft from an interstate shipment, and narcotics trafficking. It is for you to determine whether these racketeering acts were part of the conspiracy.

In order for the stated offenses of murder, robbery, extortion, kidnapping, arson, theft, bank fraud, and narcotics trafficking, to be considered as a racketeering act, the government must prove to you beyond a reasonable doubt that at least two of these crimes were, or were intended to be, committed as part of the conspiracy. It is not necessary for the government to prove that any particular defendant committed these acts personally or even that the crimes were actually committed. It is enough for the government to show that the enterprise committed or was planning to commit at least two of these racketeering activities and within a period of time short enough under all of the circumstances so that it is appropriate to say that these crimes were part of a pattern.

These offenses are defined below:

**Murder**

First degree murder is the intentional killing of another person with willfulness, deliberation, and premeditation. "Willful" means that the person actually intended to kill the

55

victim. "Deliberate" means that the person was conscious of the intent to kill. "Premeditated" means that the person thought about the killing and that there was enough time before the killing, though it may only have been brief, for the assailant to consider the decision whether or not to kill and enough time to weigh the reasons for and against the choice. The premeditated intent to kill must be formed before the killing.   Second degree murder is the killing of another person with either the intent to kill or the intent to inflict such serious bodily harm that death would be the likely result. Second degree murder does not require premeditation or deliberation.

Attempted murder is an overt act, beyond mere preparation, toward the commission of murder in the first or second degree. In order to prove attempt, the government must show that the assailant had the apparent ability, at that time, to commit the crime of murder and the specific intent to do so.

N.C. Gen. Stat. §§ 14-17, 14-2.4, 14-2.5.

**Kidnapping**

Kidnapping is unlawfully confining, restraining, or removing from one place to another, any other person without the consent of such person, for the purposes of holding such other person for a ransom or as a hostage or using such other person as a shield; facilitating the commission of any felony or facilitating flight of any person following the commission of a felony; doing serious bodily harm to or terrorizing the person confined or any other person; holding such other person in involuntary servitude; subjecting or maintaining such other person for sexual servitude; or trafficking another person with the intent that the other person be held in involuntary servitude or sexual servitude.

N.C. Gen. Stat. §§ 14-39, 14-2.4, 14-2.5.

**Robbery and Armed Robbery**

Under North Carolina law, robbery is the taking and carrying away of property from another, by force or threat of force, with the intent to deprive the victim of the property. Property means anything of value. A person commits armed robbery if they possess, use, or threaten the use of a dangerous weapon, including a firearm, during the commission of a robbery.

Under federal law, that is section 1951 of Title 18 U.S.C., obstructing interstate commerce through the use of robbery is also a crime. This law is often known as the "Hobbs Act." To prove a Hobbs Act violation, the government must show that, as a result of the robbery or attempted robbery, interstate commerce, or an item moving in interstate commerce, was delayed, obstructed, or affected in any way or degree.

N.C. Gen. Stat. §§ 14-87, 14-2.4, 14-2.5; 18 U.S.C. § 1951.

**Arson**

Arson is the willful and malicious burning of the dwelling house of another person. A "dwelling house" is a building that is inhabited by another person. That said, a person commits arson even if the inhabitants of the dwelling house are not physically inside the home at the time of the burning.

N.C. Gen. Stat. §§ 14-58, 14-2.4, 14-2.5.

**Extortion**

Extortion is obtaining anything of value from another person, with that person's consent, where the consent is obtained by threat or other form of improper coercion. The government must show that the defendant intended to obtain property or thing of value from the victim through the threat.

N.C. Gen. Stat. §§ 14-118.4, 14-2.4, 14-2.5.

**Conspiracy/Attempt**

Conspiracy is an agreement between two or more persons to commit a crime. In order to prove a conspiracy, the government must show that a person entered into an agreement with at least one other person to commit the crime (for example, murder); and (2) that the persons entered into the agreement with the intent that the crime be committed. In order to prove attempt generally, the government must show that the assailant had the apparent ability, at that time, to commit the crime and the intent to do so.

N.C. Gen. Stat. §§ 14-2.4 and 14-2.5.

**Bank Fraud**

A person commits bank fraud under 18 U.S.C. § 1344 if he knowingly executes, or attempts to execute, a scheme to defraud a bank or attempts to obtain money or credit under custody of a bank through fraudulent pretenses or representations.

A "scheme to defraud" is a pattern or course of conduct concerning a material matter designed to deceive a federally insured bank into releasing property with the intent to cause the bank to suffer an actual or potential loss. A representation is fraudulent if it was falsely made with the intent to deceive. This can include deceitful statements of half truth or the concealment of material facts. Although the government does not need to show that the bank actually suffered a loss, it must show that the scheme or representations put the bank at a risk of a loss and that the bank did not knowingly accept that risk.

Finally, the government must show that the bank's deposits were insured by the Federal Deposit Insurance Corporation.

18 U.S.C. § 1344.

**Narcotics Trafficking**

Under North Carolina law, it is unlawful for any person to manufacture, sell, deliver, or possess a controlled substance. Additionally, North Carolina law also criminalizes conspiracies and attempts to manufacture, distribute, or possess with intent to distribute a controlled substance.

Under federal law, specifically 21 U.S.C. 841(a)(1), it is unlawful for a person to knowingly or intentionally manufacture, distribute, or possess with intent to distribute a controlled substance. Additionally, federal law also criminalizes conspiracies and attempts to manufacture, distribute, or possess with intent to distribute a controlled substance.

Controlled substances include marijuana, cocaine, heroin, cocaine base (crack cocaine), methamphetamine, phencyclidine (PCP), and lysergic acid diethylamide (LSD). N.C. Gen. Stat. §§ 90-95 and 90-98. 21 U.S.C. §§ 841(a)(1) and 846.

## JURY INSTRUCTION NO. FORTY-SEVEN
### (Proof of Overt Act Not Required)

For Count One – the RICO conspiracy – the government is not required to prove any acts were taken in furtherance of the conspiracy. It is the unlawful agreement itself that is the focus of Count One. However, in order to outline the conspiracy charged and demonstrate its existence and membership, the government has alleged that the following acts were in furtherance the conspiracy.

a. On or about February 13, 2006, **CORNELL** arranged for a Latin Kings member who had been jailed for assault to be bailed out of jail.

b. On or about May 20, 2006, **RANDOLPH KILFOIL** and at least one other Latin Kings member committed an armed robbery of an individual in the parking lot of a Walmart store in Greensboro, North Carolina.

c. On or about May 20, 2006, **CORNELL** traveled to the Guilford County Jail in Greensboro, North Carolina, in an attempt to intimidate and harass law enforcement officers who had arrested three Latin Kings members, including **RANDOLPH KILFOIL**.

d. In or about April 2007, **CORNELL**, **WILSON**, **ACENCIO-VASQUEZ**, **ROSA**, and three other Latin Kings members committed theft from interstate commerce by stealing goods, including food, clothing, and other household items, from a tractor-trailer truck parked outside a Roses Department Store in Greensboro, North Carolina.

e. On or about April 11, 2007, **WILSON**, **ACENCIO-VASQUEZ**, and three other

60

Latin Kings members committed an armed robbery of a laundromat located in Greensboro, North Carolina.

f.      On or about April 12, 2007, **ROSA**, **WILSON**, **ACENCIO-VASQUEZ**, and another Latin Kings member committed an armed robbery of a music store in High Point, North Carolina.

g.      On or about April 18, 2007, **ROSA**, **ACENCIO-VASQUEZ**, **WILSON**, and one other Latin Kings member committed an armed robbery of a dry cleaning business in Greensboro, North Carolina. **ROSA** and **WILSON** brandished firearms during this robbery. **WILSON** struck the store owner on the head with a handgun.

h.      On or about April 21, 2007, **WILSON** and three other Latin Kings members committed an armed robbery of a convenience store located in High Point, North Carolina. **WILSON** and other Latin Kings members brandished firearms during this robbery. **WILSON** assaulted the clerk and stole about $300 from the register.

i.      On or about November 6, 2007, **ACENCIO-VASQUEZ** and three other Latin Kings members committed an armed robbery of a man outside his apartment complex in Raleigh, North Carolina.

j.      On or about November 6, 2007, **ACENCIO-VASQUEZ** and three other Latin Kings members committed an armed robbery of a woman in Durham, North Carolina.

k.      On or about January 27, 2008, **VELASQUEZ**, **YATES**, and five other Latin

Kings members traveled in a vehicle to a party in Greensboro where they suspected that rival gang members would be present. Each of these Latin Kings members wore black and gold, the colors of the Latin Kings. **VELASQUEZ** carried a loaded stolen handgun concealed in his waistband for protection against rival gang members.

l. In or around January 2008, **CORNELL** and **RUSSELL KILFOIL** approached the assistant manager of a cell phone store in Greensboro. **CORNELL** ordered the assistant manager to give him United States currency that she was responsible for depositing into the store's bank account. **CORNELL** showed the assistant manager a firearm and threatened her and her family if she did not do as **CORNELL** instructed.

m. On or about April 4, 2008, **CORNELL**, **VELASQUEZ**, **VASQUEZ**, **PEREZ**, and other Latin Kings members met at **YATES's** residence to discuss an altercation between a Latin Kings member and some suspected MS-13 members at the Maplewood Apartments earlier in the day. During this meeting, **CORNELL** ordered the Latin Kings to arm themselves and retaliate against the suspected MS-13 members in retribution for the earlier altercation.

n. On or about April 4, 2008, **CORNELL**, **VELASQUEZ**, **VASQUEZ**, **PEREZ**, and other Latin Kings members traveled from the home of **YATES** to the Maplewood Apartments in Greensboro on **CORNELL's** instructions to look for a rival gang member who had assaulted a Latin Kings member. In retaliation for this assault, **PEREZ** fired a shotgun at a man whom he believed to be

62

associated with the rival gang, thereby wounding him.

o.      On or about August 10, 2008, **CORNELL** and **RUSSELL KILFOIL** ordered that Latin Kings members bring firearms from Charlotte to Greensboro to be used in a retaliatory strike against MS-13 members who had previously shot **CORNELL**.

p.      On or about August 14, 2008, two Latin Kings members attempted to transport firearms from Charlotte to Greensboro pursuant to the orders of **CORNELL** and **RUSSELL KILFOIL**.

q.      On or about August 21, 2008, **YATES**, **WILLIAMS**, and several other Latin Kings members committed a home invasion in Greensboro, looking for a man who had attacked another Latin Kings member and threatened **WILLIAMS's** mother. One of the Latin Kings members smashed a beer bottle on the head of a resident of the home.

r.      On or about December 18, 2008, **YATES**, **VASQUEZ**, and two others committed an armed robbery and kidnapping of a drug dealer and his roommates in Morrisville, North Carolina. **YATES** and **VASQUEZ** pointed guns at the victims, threatened to kill them, tied them up with duct tape, and stole from them approximately $450 in United States currency and twelve grams of marijuana.

s.      On or about May 13, 2009, **RANDOLPH KILFOIL** and several other Latin Kings were sitting on the front porch of **WILLIAMS's** residence. At that time **RANDOLPH KILFOIL** carried a loaded semiautomatic firearm for protection from rival gang members. **RANDOLPH KILFOIL** was later

63

arrested, and attempted to threaten and intimidate certain Greensboro police officers by stating, "It's a good thing you got me off the streets or it would have been a hard summer for the police. You can't stop the Latin Kings. We are everywhere. We are going to teach you guys a lesson."

t.      In or around October 2009, **CORNELL** ordered a Latin Kings member to burn down a home belonging to the grandmother of **WILLIAMS** so that **CORNELL** and **WILLIAMS** could collect a portion of the insurance proceeds.

u.      On or about October 10, 2009, **CORNELL** stole a government electronic benefits card having a value of $200 in United States currency from a Latin Kings member who fled Greensboro after refusing to commit an arson for **CORNELL**.

v.      On or about November 9, 2009, **CORNELL** appointed a Latin Kings member from Charlotte to be the "Third Crown" or "Warlord" of the Charlotte tribe and appointed **WILLIAMS** to be the "Third Crown" or "Warlord" of the Greensboro tribe.

w.      On or about November 9, 2009, **CORNELL** ordered that Latin Kings members should ascertain the Charlotte location where groups of Latin Kings that were not under **CORNELL's** command were meeting and "roll up on them."

x.      On or about December 12, 2009, **CORNELL** told Latin Kings members that any groups of Latin Kings meeting in Asheboro, Smithfield, and Durham that were not under his command were not "true" Latin Kings. **CORNELL** stated that anyone falsely claiming to be a Latin Kings member in the future would be

64

"smashed."

y.     On or about December 31, 2009, **CORNELL** ordered that three Latin Kings members who had rebelled against **CORNELL's** rule be killed. **CORNELL** ordered **VELASQUEZ** to transport from Raleigh to Greensboro two machetes, each stamped with the Latin Kings reference "Corona" on the blade. **CORNELL** ordered that these machetes were to be used to kill one of the three Latin Kings members who had rebelled against **CORNELL's** rule.

z.     On or about March 1, 2010, **CORNELL** ordered Latin Kings members to provide a firearm for protection to a Latin Kings member from Charlotte who reported that he was having problems with MS-13 members.

aa.     On or about March 9, 2010, **CORNELL** declared that the comments of **YATES** that were critical of **CORNELL's** rule were not authorized. **CORNELL** instructed that loyal Latin Kings members should be ready to take action against **YATES**.

bb.     On or about March 9, 2010, **CORNELL** ordered a Latin Kings member to provide him with $200 in United States currency to purchase a firearm from a supplier in Virginia.

cc.     On or about April 25, 2010, **CORNELL** ordered **ROBINSON** and **WILLIAMS** to complete a "mission" on behalf of the Latin Kings. **ROBINSON** and **WILLIAMS** obtained an assault rifle, a shotgun, and more than ninety rounds of ammunition to carry out the "mission" ordered by **CORNELL**.

dd.     On or about May 26, 2010, **CORNELL**, **RUSSELL KILFOIL**, and other Latin

65

Kings members discussed firebombing the home of a disgruntled Latin Kings member who had disrespected **CORNELL**.

ee.    On or about May 27, 2010, **CORNELL**, **RUSSELL KILFOIL**, **WILLIAMS**, **ROBINSON**, and other Latin Kings members further discussed firebombing the home of a disgruntled Latin Kings member. **CORNELL** ordered that the firebombing should take place on Friday, May 28, 2010. **CORNELL** suggested that between 4:00 a.m. and 5:00 a.m. would be the best time to firebomb the home because the police would be changing shifts at that time. **CORNELL** instructed that the perpetrators park away from the home and walk so that they would not be seen. **CORNELL** ordered **ROBINSON** to make bottles filled with gasoline to do the job. **ROBINSON**, **WILLIAMS**, and other Latin Kings members then began filling the bottles with gasoline. **WILLIAMS** stated that he had done this before and knew what had worked for him in the past.

ff.    On or about June 4, 2010, **CORNELL**, **ROSA**, and another Latin Kings member discussed the purchase of a firearm for $325 in United States currency. **CORNELL** stated that he could purchase a "little machine gun" that "the Marines use" if they could come up with $475 in United States currency.

gg.    On or about June 22, 2010, **CORNELL** told a Latin Kings member that he was going to attend a Latin Kings conference in Detroit and that he would be making a bulk purchase of firearms upon his return.

hh.  On or about June 29, 2010, **CORNELL** stated that several Latin Kings members who had rebelled against his rule were no longer recognized as Latin Kings by "King Radar" and the Latin Kings leadership in Chicago.

ii.  On or about June 29, 2010, **CORNELL** held a Latin Kings meeting, during which **CORNELL** explained the structure of the Latin Kings and the meaning of certain Latin Kings symbols.

jj.  In or around July 2010, **MOORE** and **ROBINSON** issued a series of fraudulent checks to defraud Wachovia Bank of $2180 in United States currency.

kk.  On or about July 24, 2010, **CORNELL** and **WILLIAMS** arranged for a home belonging to the grandmother of **WILLIAMS** to be burned down in order to collect a portion of the insurance proceeds, which totaled $96,466.23.

ll.  On or about July 27, 2010, **CORNELL** bragged that he had killed an MS-13 member by stating, "I'm not going to say when or where, but I got me a 13. I got me one. A certain brother did not want to motherfucking pull the trigger, so I snatched it out of his hand and did what I had to do. You know what I am saying? I can't stand niggas hesitating."

mm.  On or about July 27, 2010, **MOORE** gave instructions to another Latin Kings member about how to implement a bank fraud scheme that **MOORE** had used previously.

nn.  On or about October 5, 2010, **RUSSELL KILFOIL**, **ROBINSON**, **MOORE**, and **COLEMAN** assaulted a former Latin Kings member outside the Guilford

67

County Courthouse in retribution for the former member leaving the gang.

oo.     On or about August 24, 2011, **CORNELL** entered into a physical altercation

with rival Latin Kings members at a shopping mall in Greensboro, North

Carolina.

See e.g., United States v. Salinas, 522 U.S. 52, 61 (1997) (Unlike the general conspiracy statute, a RICO conspiracy conviction, does not require an overt or specific act.  In order to be guilty of conspiracy under RICO, the conspirator must simply agree to the objective violation of RICO, and the conspirator need not agree personally to commit the two proscribed acts in violation of the statute.);

## JURY INSTRUCTION NO. FORTY-EIGHT
### (Post-18 Ratification by Juvenile)

As you heard testimony previously, some of the defendants, Samuel Isaac Velasquez,

Steaphan Acencio-Vasquez, Richard Lee Robinson and Carlos Coleman, were younger than 18

years of age when they allegedly joined the Latin Kings and the RICO conspiracy in Count 1.

Although you may consider the defendants' conduct prior to their eighteenth birthday as

evidence of the existence of the conspiracy or of the defendants' knowledge of the conspiracy,

you may not convict the defendants of Count 1 unless you find beyond a reasonable doubt that

the defendants continued to participate in the conspiracy after they turned 18 years of age.


See United States v. Spoon, 741 F.2d 680, 687-688 (4th Cir. 1984) (holding that while a
defendant cannot be convicted of conspiracy solely on the basis of premajority acts, the jury may
consider evidence of pre-18 activity under Rule 404(b)); United States v. Diaz, 670 F.3d 332,
340-41 (1st Cir. 2012) (upholding the use of similar instruction in conspiracy to distribute
narcotics).

69

## JURY INSTRUCTION NO. FORTY-NINE
### (The Superseding Indictment and the Statute -- Count Two)

In Count Two, the indictment charges the defendants with committing a violent crime in aid of racketeering. Count Two of the indictment reads as follows:

## COUNT TWO

On or about April 4, 2008, in the County of Guilford, in the Middle District of North Carolina, and elsewhere, for the purpose of maintaining and increasing position in the Latin Kings, an enterprise engaged in racketeering activity, **JORGE PETER CORNELL**, also known as "King J" and "King Jay," and **MARCELO YSRAEL PEREZ**, also known as "King Lyrix" and "King Sacrifice," knowingly and intentionally assaulted with a dangerous weapon, that is, a firearm, and aided and abetted the assault with a dangerous weapon, of a person known to the Grand Jury, in violation of the laws of the State of North Carolina, that is, N.C. Gen. Stat. §14-32(b).

The defendants are charged with violating section 1959 of Title 18 of the United States Code. Section 1959 reads as follows:

> Whoever, ....., or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the laws of any State or the United States, or attempts or conspires to do so [is guilty of a crime].

Inst. 52-34 (modified).

**<u>JURY INSTRUCTION NO. FIFTY</u>**
**(Elements of the Offense)**

In order to prove that the defendants violated section 1959 as charged in Count Two, the

government must establish beyond a reasonable doubt each one of the following five elements of

the offense:

<u>FIRST</u>:      That an enterprise affecting interstate or foreign commerce existed;

<u>SECOND</u>:      That the enterprise was engaged in racketeering activity;

<u>THIRD</u>:      That the defendants had (or were seeking) a position in the enterprise;

<u>FOURTH</u>:      That the defendants, or someone they aided or abetted, committed the alleged crime of violence; and

<u>FIFTH</u>:      That the defendants' general purpose in committing or aiding and abetting the crime of violence was to maintain or increase their position in the enterprise.

Inst. 52-36.

**JURY INSTRUCTION NO. FIFTY-ONE**
**(First Element -- Existence of Enterprise**
**Affecting Interstate or Foreign Commerce)**

The first element the government must prove beyond a reasonable doubt is that an "enterprise" existed, which was engaged in or had an effect upon, interstate or foreign commerce. The government has charged the same enterprise for Count Two as the RICO conspiracy in Count One, that is, the Latin Kings, including its leadership, members and associates. I have already instructed you on what is necessary for the government to prove that Latin Kings is an enterprise engaged in or had an effect upon, interstate or foreign commerce and I refer you specifically to Instructions Nos. Forty-One, Forty-Three, Forty-Four and Forty-Five.

Inst. 52-37 (modified).

**JURY INSTRUCTION NO. FIFTY-TWO**
**(Second Element -- Enterprise Engaged in**
**Racketeering Activity)**

The second element the government must establish beyond a reasonable doubt is that the enterprise was engaged in racketeering activity.   I discussed the various racketeering activity charged in connection with this case in Instructions Nos. Forty-One and Forty-Eight.  As I stated, "racketeering activity" includes violations of North Carolina law involving conspiracy to commit murder, robbery, extortion, kidnapping, arson, and narcotics trafficking and violations of federal law involving interference with commerce by threats or violence, bank fraud and narcotics trafficking. It is for you to determine whether the enterprise "engaged in" these activities as charged.  You should give the words "engaged in" their ordinary, everyday meaning.  For an enterprise to be engaged in racketeering activity, it is enough to show that the enterprise committed or was planning to commit some racketeering activity within a period of time short enough under all of the circumstances so that it is appropriate to say that the enterprise was engaged in racketeering activity.

Inst. 52-38 (modified).

## JURY INSTRUCTION NO. FIFTY-THREE
### (Third Element -- Position in the Enterprise)

The third element the government must establish beyond a reasonable doubt is that the defendants had (or were seeking) a position in the enterprise.

To establish this element, the government must prove that the defendants were actively engaged in promoting the illegal activities of the enterprise. It is not enough to prove that the defendants were doing business with the enterprise; the government must prove that they were actually members of the enterprise.

Inst. 52-39.

## JURY INSTRUCTION NO. FIFTY-FOUR
### (Fourth Element -- Defendant Committed a
### Crime of Violence)

The fourth element the government must establish beyond a reasonable doubt is that the defendants committed a crime of violence, assault with a dangerous weapon in violation of North Carolina General Statute 14-32(b). Let me now instruct you on the elements of assault with a dangerous weapon.

Inst. 52-40 (modified).

### Assault with a Dangerous Weapon Inflicting Serious Injury

To find a person guilty of assault with a dangerous weapon inflicting serious injury, the government must prove (1) an assault occurred, (2) with a dangerous weapon, (3) inflicting serious injury, (4) not resulting in death.

The government must show that an assault occurred. An assault is an intentional and overt act of force or violence that puts a reasonable person in fear of immediate bodily harm.

The government must prove that the defendant committed the assault with a dangerous weapon. You are hereby instructed that a firearm is a dangerous weapon. A firearm is a weapon that propels a bullet by gunpowder or a similar explosive.

The government must also prove that the defendant caused serious injury to the victim. Whether an injury is one that is "serious," is a factual determination to be made by you. In determining whether the injury is serious, you may consider evidence of hospitalization, pain, blood loss, and time lost at work.

I instruct you that the crime of a violent crime in aid of racketeering activity is a crime of violence.

75

See State v. Ryder, 674 S.E.2d 805, 812 (N.C. App. 2009); State v. Bagley, 644 S.E.2d 615, 623 (N.C. App. 2007); State v. Musselwhite, 481, 297 S.E.2d 181, 184 (N.C. App. 1982); State v. Pettiford,  298 S.E.2d 389, 392 (N.C. App. 1982); State v. Woods, 486 S.E.2d 255, 261 (N.C. App. 1997).

## JURY INSTRUCTION NO. FIFTY-FIVE
### (First Element -- Commission of the Predicate Crime)

The first element the government must prove beyond a reasonable doubt is that each defendant committed a crime of violence for which he might be prosecuted in a court of the United States.

The defendants are charged in Count Two of the Superseding Indictment with assault with a dangerous weapon in aid of racketeering. I instruct you that the crime of assault with a dangerous weapon in aid of racketeering is a crime of violence. However, it is for you to determine that the government has proven beyond a reasonable doubt that the defendants committed the crime of assault with a dangerous weapon in aid of racketeering as charged in Count Two of the Superseding Indictment.

77

## JURY INSTRUCTION NO. FIFTY-SIX
### (Fifth Element -- Purpose to Maintain or
### Increase Position in Enterprise)

The fifth element the government must establish when deliberating upon Count Two is that the defendants' general purpose in committing the charged crime of violence was to maintain or increase their position in or to gain entrance to the enterprise.

The government is required to prove that the defendants' general purpose was to maintain or increase their position in the enterprise. The government is not required to prove that it was the defendants' sole or principal motive.

In determining whether a defendant's purpose in committing the crime of violence was to maintain or increase his position in the enterprise, you should give the words "maintain" and "increase" their ordinary meanings. You should consider all of the facts and circumstances in making that determination.

For example, you may consider evidence that the crime, if proved, was committed in order to maintain discipline within the enterprise and served to maintain the defendant's position in the enterprise. If the defendant committed the crime because he knew it was expected of him by reason of his membership in the enterprise, or if he committed the crime because he thought it would enhance his position or prestige within the enterprise, or if he committed it because he thought it was necessary to maintain the position he already held, this element would be established.

These examples are only meant by way of illustration. They are not exhaustive.

Inst. 52-41.

## JURY INSTRUCTION NO. FIFTY-SEVEN
### (The Superseding Indictment and the Statute – Count Three)

The defendants are charged with carrying and using a firearm to commit a crime of violence. The indictment reads as follows:

## COUNT THREE

On or about April 4, 2008, in the County of Guilford, in the Middle District of North Carolina, **JORGE PETER CORNELL**, also known as "King J" and "King Jay" and **MARCELO YSRAEL PEREZ**, also known as "King Lyrix" and "King Sacrifice" during and in relation to a crime of violence for which each may be prosecuted in a court of the United States, that is, violent crime in aid of racketeering, in violation of Title 18, United States Code, Section 1959(a)(3), did knowingly carry and use by discharging, a firearm, that is, a shotgun.

The relevant statute on this subject is Title 18 United States Code, section 924(c), which provides:

> [A]ny person who, during and in relation to any crime of violence or drug trafficking crime ... for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall [be guilty of a crime].

Inst. 35-76.

79

## JURY INSTRUCTION NO. FIFTY-EIGHT
### (Limiting Instruction)

Under Count Three, the defendants are charged with using or carrying a firearm during the commission of the crime of violence which is charged in Count Two.

If upon all of the evidence you find that the government has failed to prove Count Two beyond a reasonable doubt, then you will proceed no further. Count Three are to be considered only if you first find the defendants guilty of Count Two.

In reaching your verdict on Count Three, you may consider the evidence of Count Two only for the purpose of determining whether the elements of Count Three have been satisfied.

Inst. 35-77

# JURY INSTRUCTION NO. FIFTY-NINE
## (Elements of the Offense)

The government must prove each of the following elements beyond a reasonable doubt to

sustain its burden of proving each defendant guilty:

<div style="margin-left: 2em;">

FIRST:        That the defendant, or someone he aided or abetted, committed a crime of violence for which he might be prosecuted in a court of the United States;

SECOND:     That the defendant, or someone he aided or abetted, knowingly carried and used a firearm during and in relation to the commission of the crime charged in Count Two.

</div>

Inst. 35-78 (modified).

### JURY INSTRUCTION NO. SIXTY
### (First Element -- Commission of the Predicate Crime)

The first element the government must prove beyond a reasonable doubt is that each defendant committed a crime of violence for which he might be prosecuted in a court of the United States.

The defendants are charged in Count Two of the Superseding Indictment with assault with a dangerous weapon in aid of racketeering. I instruct you that the crime of assault with a dangerous weapon in aid of racketeering is a crime of violence. However, it is for you to determine that the government has proven beyond a reasonable doubt that the defendants committed the crime of assault with a dangerous weapon in aid of racketeering as charged in Count Two of the Superseding Indictment.

Inst. 35-79.

## JURY INSTRUCTION NO. SIXTY-ONE
### (Second Element -- Carrying, Use, and Discharge of a
### Firearm during the Commission of the Predicate Crime)

The second element the government must prove beyond a reasonable doubt is that the defendant knowingly used a firearm during and in relation to the commission of the crime charged in Count Two.

A "firearm" is any weapon which will or is designed to or may be readily converted to expel a projectile by the action of an explosive.

In order to prove that the defendant used the firearm, the government must prove beyond a reasonable doubt an active employment of the firearm by the defendant during and in relation to the commission of the crime of violence. This does not mean that the defendant must actually fire or attempt to fire the weapon, although those would obviously constitute use of the weapon. Brandishing, displaying, or even referring to the weapon so that others present knew that the defendant had the firearm available if needed all constitute use of the firearm. However, the mere possession of a firearm at or near the site of the crime without active employment as I just described it is not sufficient to constitute a use of the firearm.

In order to prove that the defendant carried the firearm, the government must prove beyond a reasonable doubt that the defendant had the weapon within his control in such a way that it furthered the commission of the crime of violence or was an integral part of the commission of the crime. The defendant did not necessarily have to hold the firearm physically, that is, have actual possession of it on his person. If you find that the defendant had dominion and control over the place where the firearm was located, and had the power and intention to

83

exercise control over the firearm in such a way that it furthered the commission of the crime of violence, you may find that the government has proven that the defendant carried the weapon.

To satisfy this element, you must also find that the defendant carried or used the firearm knowingly. This means that he carried the firearm purposely and voluntarily, and not by accident or mistake. It also means that he knew that the weapon was a firearm, as we commonly use the word. Likewise, the word "discharge" should be given its common and ordinary meaning. However, the government is not required to prove that the defendant knew that he was breaking the law.

Inst. 35-80 (modified).

# JURY INSTRUCTION NO. SIXTY-TWO
## (Aiding and Abetting)

As to Counts Two and Three, the Superseding Indictment alleges that defendant committed the charged offenses under the aiding and abetting statute.

The aiding and abetting statute, section 2(a) of Title 18 of the United States Code provides that:

> Whoever commits an offense against the United States or aids or abets or counsels, commands or induces, or procures its commission, is punishable as a principal.

Under the aiding and abetting statute, it is not necessary for the government to show that a defendant himself physically committed the crime with which he is charged in order for the government to sustain its burden of proof. A person who aids or abets another to commit an offense is just as guilty of that offense as if he committed it himself.

Accordingly, you may find a defendant guilty of the offense charged if you find beyond a reasonable doubt that the government has proven that another person actually committed the offense with which the defendant is charged, and that the defendant aided or abetted that person in the commission of the offense.

As you can see, the first requirement is that you find that another person has committed the crime charged. Obviously, no one can be convicted of aiding or abetting the criminal acts of another if no crime was committed by the other person in the first place. But if you do find that a crime was committed, then you must consider whether the defendant aided or abetted the commission of that crime.

85

In order to aid or abet another to commit a crime, it is necessary that the defendant knowingly and willfully associate himself in some way with the crime, and that he participate in the crime by doing some act to help make the crime succeed.

Regarding Count Two, in order to establish that the defendant knowingly and willfully associated himself with the crime, the government must establish that the defendant knew and intended that the victim would be assaulted with a dangerous weapon and participated in the assault with the purpose of increasing or maintaining his position within the Latin Kings.

Regarding Count Three, in addition to proving that the defendant knew that a gun would be used or carried during the commission of the offense, the government must also prove that the defendant facilitated or encouraged the use, carrying or possession of that weapon in some way.

To establish that the defendant participated in the commission of the crime, the government must prove that defendant engaged in some affirmative conduct or overt act for the specific purpose of bringing about that crime.

The mere presence of a defendant where a crime is being committed, even coupled with knowledge by the defendant that a crime is being committed, or merely associating with others who were committing a crime is not sufficient to establish aiding and abetting. One who has no knowledge that a crime is being committed or is about to be committed but inadvertently does something that aids in the commission of that crime is not an aider and abettor. An aider and abettor must know that the crime is being committed and act in a way which is intended to bring about the success of the criminal venture.

To determine whether a defendant aided or abetted the commission of the crime with which he is charged, ask yourself these questions:

86

Did he participate in the crime charged as something he wished to bring about?

Did he knowingly associate himself with the criminal venture?

Did he seek by his actions to make the criminal venture succeed?

If he did, then the defendant is an aider and abettor, and therefore guilty of the offense. If, on the other hand, your answer to any one of these questions is "no," then the defendant is not an aider and abettor, and you must find him not guilty.

Inst. 11-1; 11-2 (modified).

## JURY INSTRUCTION NO. SIXTY-THREE
### (Submitting the Indictment)

I am sending a copy of the indictment into the jury room for you to have during your deliberations. You may use it to read the crimes which the defendant is charged with committing. You are reminded, however, that an indictment is merely an accusation and is not to be used by you as any proof of the conduct charged.

Inst. 9-4.

## JURY INSTRUCTION NO. SIXTY-FOUR
### (Selecting a Foreperson)

When you get into the jury room, before you begin your deliberations, you should select someone to be the foreperson. The foreperson will be responsible for signing all communications to the court and for handing them to the marshal during your deliberations.

Inst. 9-5.

**JURY INSTRUCTION NO. SIXTY-FIVE**
**(Right To See Exhibits and Hear Testimony; Communications With Court)**

You are about to go into the jury room and begin your deliberations. If during those deliberations you want to see any of the exhibits, they will be sent to you in the jury room upon request. If you want any of the testimony read, that can also be done. But, please remember that it is not always easy to locate what you might want, so be as specific as you possibly can in requesting exhibits or portions of testimony which you may want.

Your requests for exhibits or testimony--in fact any communication with the court-- should be made to me in writing, signed by your foreperson, and given to one of the marshals. I will respond to any questions or requests you have as promptly as possible, either in writing or by having you return to the courtroom so I can speak with you in person. In any event, do not tell me or anyone else how the jury stands on the issue of the defendant's guilt until after a unanimous verdict is reached.

Inst. 9-3.

## JURY INSTRUCTION NO. SIXTY-SIX
### (Duty To Consult and Need for Unanimity)

The government, to prevail, must prove the essential elements by the required degree of proof, as already explained in these instructions. If it succeeds, your verdict should be guilty; if it fails, it should be not guilty. To report a verdict, it must be unanimous.

Your function is to weigh the evidence in the case and determine whether or not the defendant is guilty, solely upon the basis of such evidence.

Each juror is entitled to his or her opinion; each should, however, exchange views with his or her fellow jurors. That is the very purpose of jury deliberation--to discuss and consider the evidence; to listen to the arguments of fellow jurors; to present your individual views; to consult with one another; and to reach an agreement based solely and wholly on the evidence--if you can do so without violence to your own individual judgment.

Each of you must decide the case for yourself, after consideration, with your fellow jurors, of the evidence in the case.

But you should not hesitate to change an opinion which, after discussion with your fellow jurors, appears erroneous.

However, if, after carefully considering all the evidence and the arguments of your fellow jurors, you entertain a conscientious view that differs from the others, you are not to yield your conviction simply because you are outnumbered.

Your final vote must reflect your conscientious conviction as to how the issues should be decided. Your verdict, whether guilty or not guilty, must be unanimous.

Inst. 9-7.

## JURY INSTRUCTION NO. SIXTY-SEVEN
### (Verdict Form)

Verdict forms have been prepared for each defendant for your convenience.  You will take these forms to the jury room and, when you have reached unanimous agreement as to your verdict, you will have your foreperson fill each form in, and then date and sign each form.  After you have done so, please advise the court, by sending a note through the Marshal, that you have reached a verdict.  When I receive that note, I shall have you return with your verdicts to the courtroom.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION


UNITED STATES OF AMERICA          :       1:11CR402-1
                                    :
             v.                  :
                                    :
JORGE PETER CORNELL, also known   :
as "King J" and King Jay"            :


WE THE JURY FIND THE DEFENDANT:


JORGE PETER CORNELL

of the offense charged in COUNT ONE of the Superseding Indictment.


_____   _____
NOT GUILTY  OR   GUILTY

of the offense charged in COUNT TWO of the Superseding Indictment.


_____   _____
NOT GUILTY  OR   GUILTY

of the offense charged in COUNT THREE of the Superseding Indictment.

If your answer to COUNT THREE is Guilty, please answer whether the Government has proven beyond a reasonable doubt that committing the violation, Mr. Cornell carried or used or both carried and used, by discharging, a firearm.

Carried         _____         _____
                   Yes       or    No

Used            _____         _____
                   Yes       or    No

Carried and Used
By discharging    _____          _____

                                  Yes            or       No


This the \_\_\_ day of November, 2012.


_____

FOREPERSON

94

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | 1:11CR402-2 |
| | : | |
| v. | : | |
| | : | |
| RUSSELL LLOYD KILFOIL, also known as | : | |
| "King Peaceful" and "Jonathan Hernandez" | : | |

WE THE JURY FIND THE DEFENDANT:

RUSSELL LLOYD KILFOIL

_____        _____
GUILTY     OR        NOT GUILTY

of the offense charged in COUNT ONE of the Superseding Indictment.


This the ___ day of November, 2012.


_____
FOREPERSON

95

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION


| UNITED STATES OF AMERICA | : | 1:11CR402-3 |
|---|---|---|
| | : | |
| v. | : | |
| | : | |
| RANDOLPH LEIF KILFOIL, also known as | : | |
| "King Paul" | : | |

WE THE JURY FIND THE DEFENDANT:

RANDOLPH LEIF KILFOIL


_____     _____
NOT GUILTY  OR    GUILTY


of the offense charged in COUNT ONE of the Superseding Indictment.


This the ___ day of November, 2012.



_____
FOREPERSON


96

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | 1:11CR402-4 |
| | : | |
| v. | : | |
| | : | |
| JASON PAUL YATES, also known as | : | |
| "King Squirrel" | : | |

WE THE JURY FIND THE DEFENDANT:

JASON PAUL YATES


_____          _____

GUILTY     OR      NOT GUILTY

of the offense charged in COUNT ONE of the Superseding Indictment.


This the ___ day of November, 2012.



_____
FOREPERSON


97

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | 1:11CR402-9 |
| | : | |
| v. | : | |
| | : | |
| SAMUEL ISAAC VELASQUEZ, also known as | : | |
| "King Hype" | : | |

WE THE JURY FIND THE DEFENDANT:


SAMUEL ISAAC VELASQUEZ


_____          _____

GUILTY      OR        NOT GUILTY

of the offense charged in COUNT ONE of the Superseding Indictment.


This the \_\_\_ day of November, 2012.



_____
FOREPERSON

98

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | 1:11CR402-12 |
| | : | |
| v. | : | |
| | : | |
| IRVIN VASQUEZ, also known as | : | |
| "King Dice" | : | |

WE THE JURY FIND THE DEFENDANT:

IRVIN VASQUEZ


_____          _____
GUILTY     OR       NOT GUILTY

of the offense charged in COUNT ONE of the Superseding Indictment.


This the \_\_\_ day of November, 2012.


_____
FOREPERSON

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION


UNITED STATES OF AMERICA          :          1:11CR402-13
                                  :
                v.                :
                                  :
CARLOS COLEMAN, also known as     :
"King Spanky"                     :

WE THE JURY FIND THE DEFENDANT:

CARLOS COLEMAN


_____     _____
NOT GUILTY  OR       GUILTY

of the offense charged in COUNT ONE of the Superseding Indictment.


This the ___ day of November, 2012.



_____
FOREPERSON

100

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION


UNITED STATES OF AMERICA          :          1:11CR402-14
                                  :
              v.                  :
                                  :
ERNESTO WILSON, also known as     :
"King Yayo"                       :

WE THE JURY FIND THE DEFENDANT:

ERNESTO WILSON


_____     _____
NOT GUILTY  OR      GUILTY

        of the offense charged in COUNT ONE of the Superseding Indictment.


This the ___ day of November, 2012.



                        _____
                        FOREPERSON


101

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case 1:11CR402 |
| | : | SUPERSEDING |
| | : | |
| JORGE PETER CORNELL, et al. | : | CERTIFICATE OF SERVICE |

I hereby certify that on the 25th day of September, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Michael W. Patrick, attorney for Jorge Peter Cornell (1), Brian M. Aus, attorney for Russell Lloyd Kilfoil (2), Christopher B. Shella, attorney for Randolph Leif Kilfoil (3), Anne R. Littlejohn, attorney for Jason Paul Yates (5), Mark Everette Edwards, attorney for Samuel Isaac Velasquez (9), Helen L. Parsonage, attorney for Irvin Vasquez (12), Charles L. White, Jr., attorney for Carlos Coleman (13) and Scott C. Holmes, attorney for Ernesto Wilson (14)

Respectfully submitted,
RIPLEY RAND
United States Attorney


ROBERT A. J. LANG
Assistant United States Attorney


LANNY A. BREUER
ASSISTANT ATTORNEY GENERAL
DEPARTMENT OF JUSTICE
CRIMINAL DIVISION


LESHIA M. LEE-DIXON
Trial Attorney